Daniel C. CHABOT and Janet Chabot, husband and wife, Respondents,

v.

James J. PARADISE and Margaret Mary Paradise, husband and wife, et al., Appellants,

Lake Minnetonka Conservation District and City of Minnetrista, Defendants.

No. 47474.

Supreme Court of Minnesota.

Sept. 15, 1978.

Rehearing Denied Oct. 19, 1978.

Lais, Bannigan & Ciresi, St. Paul, for appellants.

Coulter, Nelson, Sullivan & Frevert and Tracy R. Hicks, Minneapolis, for respondents.

Heard before KELLY, TODD and IRVINE, JJ., and considered and decided by the court en banc.

TODD, Justice.

This is an appeal from a judgment of Hennepin County District Court enjoining the maintenance of a boat dock in a restricted section of the west shore of upper Lake Minnetonka. We reverse.

The area involved here is a development known as "Loring Acres." It consists of Block 1 and Block 2. Block 1 contains 18 lots and "Outlot One," all of which front on the west shore of the lake, with Lot 1 being to the north and the other lots extending to the south. Block 2, to the west of Block 1, contains 9 lots, none of which has lake frontage. County Road No. 44 runs in a generally north-south direction on the west edge of the development. Blocks 1 and 2 are separated by Loring Drive, which commences at County Road No. 44 between Lot 6 of Block 1 and Lot 1 of Block 2, and extends in a southeasterly direction to the southern end of the development.

The area in dispute is "Outlot One." It is immediately south of Lot 18 and is the southern-most lot in Block 1. At its easterly end, it has a frontage of 80 feet on the west shore of the lake.

Loring Acres was developed by Brede Builders, a division of Brede Properties, Inc., wholly owned by William S. Brede. He purchased the land from the First National Bank of Minneapolis and George H. Partridge, as trustees of the trust created under the last will and testament of Albert C. Loring, deceased. The three, as declarants, entered into a "Declaration of Restrictive Covenants" on July 20, 1961. Paragraph 6 of this document is entitled "Reservation and Grant of Easements." The basis of the parties' dispute lies in part (d) of paragraph 6, which provides as follows:

"There is expressly hereby granted to all owners of residential lots in said addition, individually and jointly, an easement and right of way over, across and upon 'Outlot One' in said addition for the purpose of access to the waters of Lake Minnetonka for the launching and removal of watercraft, provided, however, that no object or obstruction of any kind shall be placed or permitted to remain thereon for any period of time in excess of the time necessary to accomplish such launching or removal of watercraft."

In August or September of 1967, respondent Daniel C. Chabot bought Lot 18 of Block 1 of Loring Acres from Brede. He erected on the lot his homestead, which he valued at $135,000 at the time of trial. He testified that he was aware of the limited easement contained in paragraph 6(d) and relied on it when he purchased the lot. At that time, he observed a small U-shaped dock at Outlot One, which he understood was the property of Brede. He asked Brede to remove the dock on the ground that it violated the terms of the easement. Brede admits removing the dock but denies that it was removed because of the request of Chabot. Between 1967 and 1975, several residents of Block 2 indicated a desire to install docks at the base of Outlot One. They were discouraged from doing so, however, by letters from Chabot's attorneys, who interpreted the easement granted in paragraph 6(d) as precluding grantees from building docks on the lakeshore of Outlot One.

Early in 1976, appellants James J. Paradise and Robert G. Bolles, who owned Lots 4 and 9 of Block 2, respectively, bought Outlot One from Brede and conveyed it to the Loring Acres Beach Association, Inc., a corporation of which Paradise was the president and Bolles the secretary. They secured permits from defendants Lake Minnetonka Conservation District and City of Minnetrista for the building of a dock at the base of Outlot One, and proceeded to do so. Thereupon, Chabot commenced this action. The two municipal bodies agreed to be bound by the decision of the courts, and the action was dismissed as to them.

Although the width of Outlot One varies from 30 feet at the west end to 80 feet at the east end, the only part of the outlot traversable by motor vehicle consists of a blacktopped driveway 10 feet in width which fans out to a width of about 30 feet at the easterly end on the lakefront. The road is essentially bounded by the south line of Lot 18 on the north and by a retaining wall 7 feet high on the south. A heavily wooded area lies south of the retaining wall.

The principal issue in this case is whether or not the dock placed by appellants at the east edge of Outlot One constitutes a viola-

tion of the easement granted in paragraph 6(d). The appellants take the position that the restrictive language of 6(d) encompasses only objects placed on or interfering with the blacktop road. Respondents contend that the restriction prohibits all objects of any kind from being placed on the property. The district court agreed with the respondents, found appellants to be in violation of the restriction, and ordered the removal of the dock.

A second issue arises from the fact that Chabot built a dock at the edge of Lot 18 which appears to encroach on Outlot One. Appellants invoke the time honored doctrine that "he who seeks equity must do equity" in requesting of the trial court, and now this court, to deny the relief sought by respondents.

■ 1. Taking the second issue first, the entire record presents problems for this court because of the imprecise testimony as to distances. However, it appears from photographs and plats in evidence that Chabot's dock may encroach as much as 5 feet on Outlot One. At the trial, appellants offered to have a registered survey made to determine the exact situation if respondents would share the cost of the survey. Appellants assign as error the trial court's refusal to accept the offer. That court left the matter of the survey to the desires of the parties. The trial judge may have been influenced by respondents' repeated offer during the trial and thereafter to correct the situation if there was in fact an encroachment. In any event, an encroachment by Chabot's dock would not necessarily deprive the Chabots of "clean hands." The question is whether the encroachment is willful or merely inadvertent. *Johnson v. Freberg*, 178 Minn. 594, 228 N.W. 159 (1929). The trial court apparently was of the opinion that the encroachment, if any, was inadvertent, and we find no evidence that it was willful. There is evidence that the iron marker designating the southeast corner of Lot 18 could not be found, possibly because it was covered over by blacktop. This, together with respondents' offer to correct any encroachment, presents a situa-

tion which we feel should not bar respondents from pursuing equitable relief.

2. Turning to the central issue of this appeal, we cannot agree with the trial court that the restrictions written into the 6(d) easement bar the construction and use of appellants' dock as it now exists. Of critical importance is the fact that the association which constructed the dock owns the fee in Outlot One. The case is therefore not one in which the grantees of an easement have subjected the easement to an improper or excessive use. Rather, the question for decision is whether the fee holders have utilized Outlot One in such a fashion as to interfere with the admittedly valid easement set forth in paragraph 6(d). In order to determine whether appellants have impaired easement rights, however, it is first necessary to ascertain the scope of the easement itself.

■ In *Farnes v. Lane*, 281 Minn. 222, 224, 161 N.W.2d 297, 300 (1968), we noted that where the language of an easement granting access to lakeshore is unambiguous, the terms of the easement alone are controlling. We also held that the meaning of ambiguous terms is to be ascertained by reference to general principles of construction, with particular emphasis on the purpose of the easement and the intention of the grantor. Against the backdrop of the *Farnes* decision, the parties in the present case have devoted much discussion to the presence of ambiguity in paragraph 6(d) and purpose of the easement contained therein. In our view, however, it is unnecessary to resolve these questions. Again, the restrictive phrase " * * * no object or obstruction of any kind shall be placed or permitted to remain thereon * * * " *limits only the rights of easement grantees.* That is, the easement grants a right of access which does not include the right to place nontemporary objects of any kind on Outlot One. But the same restriction does not apply to the fee holder of Outlot One. The Loring Acres Beach Association possesses the full panoply of ownership rights, subject only to the access rights granted to others in paragraph 6(d). Thus, the associa-

tion may utilize the property as it deems fit, so long as it does nothing to interfere with the rights of other Loring Acres property owners to gain access to Lake Minnetonka by traversing Outlot One.

█ The testimony and evidence in this case make it abundantly clear that appellants' dock in no way impairs the ability of other Loring Acres owners to gain access to the lake. The lakeshore frontage at the foot of the blacktopped access road is separated from the road surface by a rather steep bank. The access area covers approximately the northern ⅔ of Outlot One's frontage. Appellants' dock is located at the extreme southern edge of the lot. Testimony indicates that boat launching would be feasible only by backing a boat trailer straight down the incline with a 4-wheel drive vehicle. Thus, with appellants' dock in its present location and configuration,[1] it would be impossible for it to interfere with boat launching or other activities at the foot of the access road. Accordingly, we conclude that the district court order directing appellants to remove their dock and enjoining any other dock construction must be vacated.

Reversed with instructions to enter judgment in favor of appellants.

Reversed.

L. J. IRVINE, Justice * (dissenting).

I respectfully dissent.

Among the essential elements of an easement are: That it is incorporeal, is imposed on corporeal property, and is imposed for the benefit of corporeal property; that there are two distinct tenements, the dominant to which the right belongs and the servient on which the obligation is imposed; and that the ownership of the easement is separate and distinct from the land to which it is attached. 28 C.J.S. Easements § 1, p. 621; *Burnquist v. Cook*, 220 Minn. 48, 55, 19 N.W.2d 394, 398 (1945).

The majority opinion makes this statement: " \* \* \* [T]he restrictive phrase ' \* \* \* no object or obstruction of any kind shall be placed or permitted to remain thereon \* \* \* ' *limits only the rights of easement grantees.* That is, the easement grants a right of access which does not include the right to place nontemporary objects of any kind on Outlot One. But the same restriction does not apply to the fee holder of Outlot One." No precedent is cited for that statement, and I can find none in Minnesota. Certainly the appellant and his associates own the fee title to Outlot One, but they bought it *subject to the easement.*

In *Johnson v. Seifert*, 257 Minn. 159, 168, 100 N.W.2d 689, 696 (1960), we find this language: " \* \* \* [A]n abutting or riparian owner of a lake \* \* \* has a right to make such use of the lake over its entire surface, in common with all other abutting owners, provided such use is reasonable and does not unduly interfere with the exercise of similar rights on the part of other abutting owners \* \* \*." However, there was no easement involved in that case. In the instant case, the easement states that " \* \* \* no object *or* obstruction of any kind shall be placed or permitted to remain thereon for any period of time in excess of the time necessary to accomplish such launching or removal of watercraft." The use of the disjunctive "object or obstruction" would seem to indicate that the prohibition is not limited to objects which obstruct access to the lake. In any event, the appellant's dock is well within the boundaries of Outlot One and could very well constitute an obstruction if several persons wished to launch their boats at the same time.

There is no evidence that the easement contained in 6(d) has been released by the owners of the dominant estate (which include *all* of the owners of Block 1 and Block 2) either by abandonment, *Simms v. Fagan*,

---

1. We decide only the facts before us and need intimate no opinion on a larger or differently situated dock.

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

216 Minn. 283, 12 N.W.2d 783 (1943); *Herrmann v. Larson*, 214 Minn. 46, 7 N.W.2d 330 (1943), or by agreement, *La-Plant v. Schuman*, 197 Iowa 466, 196 N.W. 280 (1923), or indeed by any of the methods by which an easement may be terminated. 28 C.J.S. Easements § 52, p. 716.

I believe that the trial court has correctly construed the easement and should be affirmed. Therefore, I respectfully dissent.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice Irvine.

KELLY, Justice (dissenting).

The easement given in this case for a right of way was over, across and upon Outlot One for the purpose of access to the water for the launching of watercraft. Thus it covered all of that Lot. If any of the grantees desired to launch a boat off the southeast corner of the lot, it could not be done without an obvious interference by the dock built by appellants. The announced purpose of the easement being that of permitting the launching and removal of watercraft, it follows that the riparian rights all along the shoreline of Lot One were involved and any dock built in the water along that shoreline would to some degree interfere with the launching of boats. Under the majority opinion, how big a dock may be built by appellants? If only one boat of some size may be launched at one time because of the size and placement of future docks built by appellants, would our decision be the same?

It should be noted that all lots with the exception of Outlot One were designated as residential lots. Outlot One apparently was reserved for the very purpose of giving access to the lake to the owners of residential lots. Its shape and size also indicate that the main purpose of carving out this lot was essentially that of access. Where the owners of 27 residential lots are entitled to use Outlot One for launching and removing watercraft, 80 feet of frontage on the lake is a reasonable amount of land for that purpose. In this case because of the size of Outlot One the language used by sophisti-cated knowledgeable draftsmen in creating the easement, and the number of owners entitled to use the easement it should be construed to provide for the entire use of Outlot One. The fact that the entire 80 feet of frontage may not be usable at the present time because of the terrain or may only be used with 4-wheel drive vehicles should not preclude the easement owners from barring uses inconsistent with their easement. The easement owners should be entitled to make any reasonable improvements necessary to the full enjoyment of the easement.

I join in the dissent of Mr. Justice L. J. Irvine.

OTIS, J., took no part in the consideration or decision of this case.